**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| M RESOURCES TRADING PTY LTD.<br><br>     Plaintiff,<br><br>vs.<br><br>JOHN DOES 1-5; JP MORGAN CHASE BANK, N.A.; AND REFLECTANCE SALES COMPANY, LLC<br><br><br>     Defendants. | Civil Action  No. _____ |

## COMPLAINT FOR INJUNCTION AND DAMAGES

## PARTIES

1.     Plaintiff M Resources Trading Pty Ltd. ("M Resources"), is an Australian Corporation with agents in Butler County, Pennsylvania.

2.     Nominal Defendant JP Morgan Chase Bank, N.A. ("JP Morgan") is a national banking association with branches and offices in Pittsburgh, Pennsylvania, and is registered to do business in Pennsylvania.

3.     Nominal Defendant Reflectance Sales Company, LLC ("Real Reflectance") is a Delaware Limited Liability Company with a designated office address of 200 George Street, Suite 4, Beckley WV 25801.

4.     Defendants John Does 1-5 are unknown persons or entities who illegally accessed Real Reflectance's computers with the intent to perpetrate a fraud upon M Resources and Real Reflectance. Despite diligent efforts, Plaintiff has not been able to identify the identities or locations of John Does 1-5.

**JURISDICTION AND VENUE**

5.      This Court has subject matter jurisdiction over this lawsuit pursuant to 28 U.S.C. §1331 because this case involves a federal question under the Computer Fraud and Abuse Act (18 U.S.C. §1030 et seq.).

6.      This Court has personal jurisdiction because defendants John Does committed an intentional tort; Plaintiff suffered the harm from the tort in Pennsylvania; and John Does directed their fraudulent conduct at M Resources personnel in Pennsylvania.

7.      Venue is appropriate in this District because Plaintiff and Defendant JP Morgan have operations in this District.

**FACTUAL BACKGROUND**

8.      M Resources and Real Reflectance are parties to a contract whereby Real Reflectance sold and M Resources purchased coal.

9.      Under the contract, M Resources was obliged to make a payment of Ten Million Six Hundred and Eighty-Six Thousand Five Hundred and Seventy-Seven Dollars and Sixty-Six Cents ($10,686,577.66) in total. Of this amount, Five Million Three Hundred and Forty-Three Thousand Two Hundred and Eighty-Eight Dollars and Eighty-Three Cents ($5,343,288.83) (the "Wire") were paid as a partial settlement via wire transfer to an account nominated by Real Reflectance.

10.     On October 16, 2025, John Does 1-5, who were acting fraudulently under the identity of Real Reflectance by way of impersonating the email accounts of Real Reflectance, nominated the account to be paid, which is an account held by JP Morgan.  On November 4, 2025, M Resources initiated the Wire into the nominated JP Morgan account (the "JP Morgan Account").

11.    On or about November 13, 2025, Real Reflectance informed M Resources that it had not received the payment.

12.    Real Reflectance informed M Resources that the JP Morgan Account is not an account controlled by Real Reflectance; it is an account that appears to be controlled by John Does 1-5 - persons or entities that are not Real Reflectance or known by Real Reflectance that hacked Real Reflectance's computer systems and email accounts.

13.    The fraudulent nomination of the JP Morgan Account, which caused M Resources to order payment of $5,342,288.83 million into that account, occurred by fraud arising out of the computer systems of Real Reflectance and/or its agent(s) being hacked by John Does 1-5.

14.    Real Reflectance informed JP Morgan that the account was fraudulently obtained and that it was not controlling the account, but because the account credentials did not include the officers of Real Reflectance, JP Morgan would not discuss the account or the alleged fraud with Real Reflectance.

15.    After the fraud was discovered, M Resources advised its bank, ING Bank, NV, Amsterdam ("ING") of the fraud.

16.    ING requested that JP Morgan reverse and reject the payment order.

17.    A SWIFT cancellation notice has been issued to JP Morgan.

18.    Because this fraudulent JP Morgan Account is not an account of the actual beneficiary, M Resources requested JP Morgan to freeze the account.

19.    M Resources filed a complaint with the Federal Bureau of Investigation cyber crimes unit (the "IC3 Complaint").

20.    John Does 1-5 have also attempted to perpetrate this fraud by sending SWIFT communications to JP Morgan.

21.     John Does 1-5 sent JP Morgan a false and fraudulent contract ("Fraudulent Contract") for "The Supply of Telecom Equipments Supplies, Modems 1.4 Models, Computer Hardwares."

22.     The Fraudulent Contract was sent to JP Morgan by John Does 1-5 in an attempt to substantiate their claim to the monies in the JP Morgan Account.

23.     The Fraudulent Contract names M Resources and Real Reflectance as parties and states the amount of the contract is for $5,343,288.83.

24.     The Fraudulent Contract states that the contract amount of $5,343,288.83 is for the purchase of telecom products such as networking devices, computer monitors, keyboards, and router chipsets.

25.     M Resources believes and therefore avers that there is a substantial risk that Defendants John Does 1-5 have and/or will (i) further transfer the $5,342,288.83 to defraud Real Reflectance and Plaintiff, and (ii) otherwise dissipate, transfer or secrete the $5,342,288.83.

## CAUSES OF ACTION

### COUNT I
**Violation of the Computer Fraud And Abuse Act ("CFAA") 18 U.S.C. §1030 *et seq*.**

26.     Plaintiff repeats and realleges the above paragraphs as if fully set forth herein.

27.     The CFAA gives Plaintiff a private right of action against computer hackers.

28.     Real Reflectance's computer is equipped with email, internet browsing software, and access to social media. Accordingly, the computer is a "protected" computer used in interstate commerce and communication.

29.     John Does 1-5 had no authorization to access the Real Reflectance computer.

30.     John Does 1-5 knowingly accessed Real Reflectance's computer and did so with the intent to defraud and steal from Plaintiff and Real Reflectance.

31.     John Does 1-5 used the unauthorized access to misappropriate and steal $5,342,288.83 from Plaintiff/Real Reflectance which exceeds the CFAA minimum threshold of $5,000.00. Therefore, Plaintiff is entitled to compensatory damages.

32.     Plaintiff is further entitled to injunctive and equitable relief pursuant to the CFAA including but not limited to (i) a temporary restraining order and injunction enjoining John Does 1-5 from accessing the JP Morgan Account; (ii) an Order directing JP Morgan to freeze the JP Morgan Account and not allow transfers or withdrawals from the JP Morgan Account; (iii) if all or any part of the Wire is no longer in the JP Morgan Account, an order requiring John Does 1-5 to disgorge their ill-gotten gains; (iv) an order for an accounting of the amount and location of the stolen funds; (v) an order imposing a constructive trust; (vi) an order freezing the assets of John Does 1-5; and (vii) an order enjoining the further transfer or disposition of Plaintiff's stolen assets by any party including JP Morgan.

**COUNT TWO**
**Violation of the Pennsylvania Uniform Voidable Transactions Act ("PUVTA")**

33.     Plaintiff repeats and realleges the above paragraphs as if fully set forth herein.

34.     The transfer to the  JP Morgan Account is a voidable transaction under the Pennsylvania Uniform Voidable Transactions Act ("PUVTA") which provides that a "transfer made or obligation incurred by a debtor is fraudulent as to a creditor, ... if the debtor made the transfer or incurred the obligation:  (1) with actual intent to hinder, delay or defraud any creditor of the debtor;" 12 Pa. Cons.Stat. Ann. § 5104(a)(1).

35.     John Does 1-5's intent to defraud makes the transfer of the funds from M Resources into the JP Morgan Account, (which is not an account of the true creditor, Real Reflectance) a voidable transaction.

## COUNT THREE
**Injunction**

36.     Plaintiff repeats and realleges the above paragraphs as if fully set forth herein.

37.     Pursuant to Fed. R. Civ. P. 65 and 12 Pa.C.S. § 5107, Plaintiff is entitled to injunctive relief.

38.     12 Pa.C.S. § 5107 permits a Court to grant an injunction and other applicable relief as a provisional remedy against the asset transferred.

39.     The provisions of 12 Pa.C.S. § 5107, provide, in part, as follows:

> (a) Available remedies.--In an action for relief against a transfer or obligation under this chapter, a creditor, subject to the limitations in sections 5108 (relating to defenses, liability and protection of transferee) and 5109 (relating to extinguishment of cause of action), may obtain:
>> (1) Avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim.
>> (2) An attachment or other provisional remedy against the asset transferred or other property of the transferee in accordance with the procedure prescribed by applicable law.
>> (3) Subject to applicable principles of equity and in accordance with applicable rules of civil procedure:
>>> (i) an injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or of other property;

40.     In order to protect M Resources and Real Reflectance from further fraudulent transfers or dissipation of the Wire, this Court should grant provisional relief to M Resources in the form of a temporary restraining order and injunction against John Does 1-5 and JP Morgan Bank, and any other person in custody or control of the Wire preventing further transfer or disposition pending further order of this Court.

41.     Pursuant to 12 Pa.C.S. § 5107, M Resources requests entry of an immediate temporary restraining order (a) freezing the JP Morgan Account, (b) directing the immediate return of the Wire to M Resources or in the alternative to Real Reflectance; and (c) prohibiting further transfer of the Wire by John Does 1-5 or JP Morgan.

## COUNT FOUR
### Conversion

42.     Plaintiff repeats and realleges the above paragraphs as if fully set forth herein.

43.     Conversion occurs when one party denies another party of its right of property in, or use of or possession of, a chattel, without the party's consent and without lawful justification.

44.     The diversion of funds properly payable to Real Reflectance to the JP Morgan Account is a conversion of those funds to the detriment and harm of Plaintiff.

45.     M Resources did not consent or agree to the transfer to John Does 1-5.

46.     John Does 1-5 and JP Morgan lack lawful justification to dispose of the Wire.

47.     John Does 1-5 and JP Morgan have converted the Wire.

48.     Plaintiff is entitled to actual damages in the amount of $5,342,288.83 plus compensatory damages, interest, fees and costs incurred by Plaintiff as a result of the conversion.

## COUNT FIVE
### Fraud

49.     Plaintiff repeats and realleges the above paragraphs as if fully set forth herein.

50.     During the month of October and in through November John Does 1-5 sent or caused to be sent to M Resources emails impersonating Real Reflectance and providing fake invoices and wire instructions.

51.     As a result of this fraudulent conduct, M Resources wired funds to the JP Morgan Account and the funds were stolen.

52.     Plaintiff is entitled to actual, compensatory and punitive damages.

## COUNT SIX
### Unjust Enrichment

53.     Plaintiff repeats and realleges the above paragraphs as if fully set forth herein.

54.     John Does 1-5 obtained a benefit to which they were not entitled by their fraudulent conduct.

55.     It would be inequitable to permit John Does 1-5 to retain the stolen funds.

56.     Plaintiff is entitled to restitution and such other relief as the court deems just and proper.

### COUNT SEVEN
### Civil Rico

57.     Plaintiff repeats and realleges the above paragraphs as if fully set forth herein.

58.     John Does 1-5 are engaged in an organized structure and have engaged in a pattern of racketeering activity to defraud M Resources and Real Reflectance in violation of 18 U.S.C. § 1962.

59.     John Does 1-5 violated 18 U.S.C. § 1343 when it used the internet to fraudulently communicate with M Resources while impersonating Real Reflectance to designate an account to send the Wire.

60.     John Does 1-5 further violated 18 U.S.C. § 1344 when they improperly and fraudulently established a bank account in the name of Real Reflectance for the purpose of soliciting and obtaining funds from M Resources that were the rightful property of Real Reflectance.

61.     John Does 1-5 acted in concert to perpetrate these predicate acts with the intent to defraud M Resources and Real Reflectance out of the value of the Wire.

62.     M Resources and Real Reflectance have been damaged as a result of this conduct.

63.     Pursuant to 18 U.S.C. § 1964(c), M Resources is entitled to restitution, treble damages, the costs of suit and reasonable attorney's fees.

## COUNT EIGHT

**Equitable Relief Against John Doe and the Relief Defendants: (i) Enjoining Current and Future Holders Of The Stolen Assets From Transferring Or Disposing Of The Stolen Assets; (ii) Enjoining Current and Future Holders Of The Stolen Assets To Disgorge the Stolen Assets; (iii) Establishing a Constructive Trust Over the Stolen Assets; and (iv) An Accounting of the Stolen Assets.**

64.    Plaintiff repeats and realleges the above paragraphs as if fully set forth herein.

65.    The assets stolen by John Does 1-5 are specific and identifiable property and can be traced to John Does 1-5 and all or a part are in the JP Morgan Account.

66.    In order to further prevent the dissipation of the stolen assets, Plaintiff requests an order enjoining the transfer or disposition of those assets, including present and future holders of the Stolen Assets, including JP Morgan.

67.    The Stolen Assets also must be disgorged to Plaintiff because John Does 1-5 are not entitled to the benefits of the Stolen Assets.

68.    The Stolen Assets must be held in trust for Plaintiff because John Does 1-5 are not entitled to the benefits of the Stolen Assets.

69.    John Does 1-5 have attempted to dissipate the Stolen Assets with the goal of making the Stolen Assets difficult to track.

70.    Plaintiff requests an accounting as to the location of the Stolen Assets if the entire balance of $5,342,288.83 is no longer in the JP Morgan Account.

71.    Plaintiff requests the imposition of a constructive trust upon the property that was stolen from it by John Does 1-5.


## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment in his favor and against defendant John Does 1-5 as follows:

a.    An injunction ordering JP Morgan to freeze the JP Morgan Account;

b.    An injunction directing John Does 1-5 and JP Morgan to disgorge the Stolen Assets;

c.    An injunction preventing any unknown holders of John Does 1-5's Stolen Assets from transferring or otherwise disposing of the Stolen Assets;

d.    An injunction ordering any unknown holders of John Does 1-5's Stolen Assets to disgorge the Stolen Assets;

e.    An order awarding Plaintiff actual, compensatory and consequential damages;

f.    An order awarding Plaintiff punitive damages in an amount to be determined;

g.    An order awarding Plaintiff pre- and post- judgment interest;

h.    An order awarding Plaintiff attorney's fees, expert and consultant fees and expenses, and costs; and

i.    Such other and further legal and equitable relief as the court deems just and proper.

**DEMAND FOR JURY TRIAL**

Respectfully Submitted,

TUCKER ARENSBERG, P.C.

*/s/ Michael Leahey*
Michael A. Shiner, Esquire
Pa. ID #78088
Beverly Weiss Manne, Esquire
Pa. ID #34545
Michael Leahey, Esquire

Pa. ID #92933
1500 One PPG Place
Pittsburgh, PA 15222
Phone: 412-566-1212
Fax: 412-594-5619

*Counsel for M Resources Trading Pty Ltd.*

## VERIFICATION

I, Craig McLane, declare as follows:

      1.      I am Managing Director at M Resources Trading Pty. Ltd.

      2.      I have personal knowledge of the facts set out in the foregoing Complaint, and if called on to testify I would competently testify as to the matters stated herein.

      3.      I verify under penalty of perjury under the laws of the United States of America that the factual statements in this Complaint are true and correct to the best of my knowledge, information and belief. 28 U.S.C. § 1746.

Executed on November 20, 2025.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Complaint was provided via email on this 21$^{tst}$ day of November 2025 to the party below:

Reflectance Sales Company, LLC
Roy West, CFO
rewest@reflectanceenergy.com
200 George Street, Suite 4
Beckley WV 25801

I hereby certify that a true and correct copy of the foregoing Complaint is being made via hand delivery on this 21st day of November 2025 to the party below:

JP Morgan Chase Bank, N.A.
Registered Agent: CT Corporation System
600 North 2nd Street
Suite 401
Harrisburg, PA 17101

Service upon John Does 1-5 has not been made as Plaintiff is unable to identify these Defendants at this time.

Respectfully Submitted,

TUCKER ARENSBERG, P.C.

*/s/ Michael Leahey*
Michael A. Shiner, Esquire
Pa. ID #78088
Beverly Weiss Manne, Esquire
Pa. ID #34545
Michael Leahey, Esquire
Pa. ID #92933
1500 One PPG Place
Pittsburgh, PA 15222
Phone: 412-566-1212
Fax: 412-594-5619

*Counsel for M Resources Trading Pty Ltd.*

13